In this suit, plaintiff seeks to recover from the defendant, a cooperative association organized and existing by virtue of the laws of this State, the sum of $224.27, with judicial interest thereon from June 29, 1944, less a credit of $98 of date of October 24, 1944.
Plaintiff alleges that in June, 1944, he delivered to the defendant certain hampers of peppers which were delivered to it as factor or commission merchant for sale to the best advantage of plaintiff on the commission basis of 10¢ per hamper, and that defendant was faithfully to account to him for the proceeds thereof, less its commission. He itemizes his deliveries as follows: 6-22-44, 37 hampers of No. 1 peppers; 6/23/44, 37 hampers of No. 1 peppers and 1 hamper of No. 2 peppers; 6/28/44, 13 hampers of No. 1 peppers and 6/29/44, 10 hampers of No. 1 peppers and 1 hamper of No. 2 peppers; that on June 22, 1944, there were also delivered to defendant 22 hampers of No. 1 peppers and 7 hampers of No. 2 peppers in the name of Adam Martin in which he had an undivided one-half interest, to the knowledge of defendant. He alleges that thereafter the defendant sold the said produce to Brown 
Studstill for the following amounts: 6-22-44, No. 1 peppers @ $2.50 per hamper; 6-23-44, No. 1 peppers @ $2.50 per hamper and No. 2 peppers @ 75¢ per hamper; 6/24/44, No. 1 peppers at $2.50 per hamper and No. 2 peppers at 75¢ per hamper; 6-28-44, No. 1 peppers @ $2.25 per hamper; 6/29/44, No. 1 peppers @ $2.25 per hamper and No. 2 peppers @ 75¢ per hamper; that defendant has failed, refused and neglected to account to him for said sales and on October 24, 1944, defendant tendered to him a check in the sum of $98 in full settlement of the account, which check he refused to accept as such, but did accept such check in partial payment of the account. He further alleges that he has made demand upon defendant for an accounting, particularly for an accounting of the sales as of the several dates mentioned in his previous allegations, and which accounting the defendant has failed, refused and neglected to make. His prayer is for a judgment against the defendant for $146.27, with interest thereon from 6/29/44 until paid, with costs.
In its answer, defendant admits that plaintiff delivered unto it the hampers of peppers on the dates set forth as alleged, together with the delivery of the hampers of peppers by Adam Martin in which plaintiff had an undivided half interest, in its capacity as commission merchant, to be disposed of at plaintiff's best advantage, on a commission of 10¢ per hamper and to faithfully render an account to plaintiff for the proceeds thereof. It denies that it sold said produce to Brown Studstill for the prices stated and denies that it failed to give unto plaintiff an accounting of the sale of such produce, averring that it had overpaid plaintiff by the sum of $2.96. It admits that plaintiff accepted the check of $98 only as a partial payment of the account. Its prayer is that plaintiff's suit be dismissed and that there be judgment *Page 549 
in its favor, and against plaintiff, reducing the amount clairned by plaintiff to the sum of $95.05, together with all costs of the suit.
On these isues, the suit was tried, resulting in a judgment, without written reasons, in favor of the defendant, dismissing plaintiff's suit at his costs. Plaintiff has appealed.
In this Court the defendant has filed a motion to dismiss the appeal on the ground and for the reasons (1) that the transcript was not filed within the time prescribed by law, and the order of Court granting the appeal, and (2) that the order of the district judge extending the time for filing the transcript from January 25, 1946, to February 8, 1946, was and is of no legal force and effect, for the reason that said application for extension of the return day should have been made to this court and not to the district court.
The transcript shows the original order granting the appeal was signed on December 7, 1945, making the appeal returnable on or before the 25th day of January, 1946, well within the sixty days as required by law, by plaintiff furnishing bond in the sum of $75. On that day, the plaintiff made the necessary deposit of $5 to cover the cost of appeal, and furnished a bond accordingly by plaintiff's attorney signing as surety. This bond was not questioned by the defendant for any reason. Thereafter, the clerk of the district court, upon the suggestion of the trial judge that the surety was not a competent person to sign the bond for the reason that he was the attorney of record for plaintiff, wrote the attorney for plaintiff requesting a new bond, which new bond was furnished on January 15, 1946. On January 24, 1946, on motion of the clerk of the district court, the trial judge granted an extension of time to the clerk of said court to file the transcript in the court, fixing the return date thereof as February 8, 1946.
[1-3] It is now well settled that upon obtaining an order for appeal and the perfection of such appeal by the furnishing of an appeal bond, the lower court loses the jurisdiction of the case, save to test the sufficiency of the appeal bond. In this case, the appellee failed to file a motion to test the sufficiency of the bond. It was beyond the duty of the clerk of court to require additional surety on the bona formerly furnished. It was likewise beyond the jurisdiction of the district court to extend the return date to file the appeal. Such an order should have been obtained from this court.
[4, 5] However, the original order of the district judge stands. Plaintiff furnished a bond which is not now contested by appellee. The transcript was filed in this court on February 7, 1946. The record conclusively shows that the record was filed in this court after the return date as fixed by the trial judge through no fault of the appellant. It is now well settled that it is the duty of the district clerk to file the transcript in this court and if he fails to do so before the time for filing expires, the fault cannot be attributed to the appellant, and the return date is automatically extended. See Osborne v. Mossler Acceptance Corporation, La. App.,24 So.2d 655 and the cases therein cited
The motion to dismiss the appeal is therefore overruled.
The defendant is a cooperative association and as such is governed by a board of directors. The benefit derived by the members is that at the end of the season or year the members thereof participate by way of package rebate on any surplus then existing. It is authorized to act as factor or commission merchant for non-members, producers or growers of agricultural products, save that such nonmembers do not participate in any surplus at the end of the season or year.
[6] Plaintiff, a producer or grower of peppers, a non-member of defendant, delivered unto the defendant, on June 22 to June 29, 1944, inclusive, ninety-nine hampers of peppers, 97 of which hampers were of Grade No. 1, and 2 hampers were of Grade No. 2. There were also delivered to the defendant, on June 22, 1944, 22 hampers of No. 1 peppers and 7 hampers of No. 2 peppers, in which plaintiff had an undivided half interest. These peppers were commingled with the other peppers of other *Page 550 
producers, however without the consent of plaintiff, thereby making it impossible to determine the ultimate disposal of the same by the defendant. The evidence shows that defendant sold peppers on the days which plaintiff and his tenant delivered the peppers to truck owners for cash, and shipped some by express. The evidence shows that on June 22, 1944, defendant shipped and sold 440 hampers of peppers for which it received $1,282, an average of $2.84 per hamper. On June 23, 1944, defendant sold to Frank Studstill 665 hampers at $2.25 per hamper, 25¢ less than claimed by plaintiff. On June 28, 1944, defendant sold to Frank Studstill 156 hampers at $1.75 per hamper. On June 29, 1944, defendant sold to Frank Studstill 96 hampers at $1.75.
The evidence further shows that plaintiff made repeated demand for an accounting in accordance with Act No. 206 of 1906, § 1, and Act No. 8 of 1918, § 4, which was refused because the peppers had been commingled with other peppers. However, on October 24, 1944, defendant, through its attorney, sent a check for $98 in payment of plaintiff's account, which was refused. There is filed a check of defendant, payable to the order of plaintiff, dated July 27, 1944, for the sum of $98, to which there is attached an "account sales", showing the sale of 97 hampers of No. 1 peppers at $1 per hamper, and 2 hampers of No. 2 peppers at 50¢ per hamper. This statement is not in accordance with Act No. 206 of 1906. Mr. Kenneth Pitcher testified that the amount of $1 per hamper was reached by averaging the sale of peppers for 9 days. He testified that in the nine day period defendant sold 8608 hampers for $9,010.37, making an average price of $1.04 2/3 per hamper. The five day average included 5107 hampers and which sold for $5,378.83, which he says makes an average of 950 per hamper. No attempt was made to keep plaintiff's account separate from others.
From the evidence as reflected by the record we are unable to determine for what reason the defendant averaged the price of peppers either on a nine or five days' basis from June 22, 1944, the first date of delivery by the plaintiff of peppers to defendant. No satisfactory explanation is made thereof. Furthermore, there are account sales in the record which show that in between June 22, 1944, and June 29, 1944, defendant sold to Frank Studstill certain peppers at certain prices, that is, $2.25 and $1.75 per hamper. The evidence is not satisfactory as to whether these were returns of previous shipment or consignment of peppers or were peppers sold and delivered to the said Studstill at the platform of defendant at Springfield, amongest which may have been plaintiff's peppers. For a certainty, however, there is not included in the offer of payment by the defendant to plaintiff, his share of an undivided one-half of the 22 hampers of No. 1 and 7 hampers of No. 2 peppers which he owned with Adam Martin which was delivered to defendant on June 22, 1944. Thus we are unable to arrive at a satisfactory conclusion as to the proper judgment to be rendered in this case.
Using our discretion as granted to us under Code of Practice Article 906, we deem it best to reverse the judgment appealed and remand the case for further proceedings.
For these reasons assigned it is ordered that the judgment appealed from is hereby reversed and set aside, and it is now ordered that this case be and the same is hereby remanded to the Twenty-first Judicial District Court for the Parish of Livingston for further proceedings, the cost of this appeal to be paid by defendant, all other costs to await the final disposition thereof. *Page 551